**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JOHN ENNIS, :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant. :

Case No. 3:07-cv-443

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a.

With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national

3

economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on July 31, 2002, alleging disability from February 26, 2002, due to a back injury, a knee injury, breathing problem, mental stress, and medication dependence. (Tr. 72-74; 249-49(B); 99-108). Plaintiff's applications were denied initially and on reconsideration. (Tr. 55-58, 61-63; 251-51(C), 253-53(B)). A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 521-43), who determined that Plaintiff was not disabled. (Tr. 254-64). The Appeals Council granted Plaintiff's request for review and remanded the matter. (Tr. 266-69).

On remand, Judge Shell held a hearing, (Tr. 544-85), and again determined that Plaintiff is not disabled. (Tr. 14-33). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff has severe degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee with residuals of surgery, obesity, chronic obstructive pulmonary disease, a history of mild cerebral vascular accident, and bipolar and anxiety disorders, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 31, finding 3). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.*, finding 5; Tr. 32, finding 7. Judge Shell then used section 201.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* findings 11, 12. Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 33).

4

Plaintiff sustained a work-related knee injury in 1999. *See* Tr. 133-34. Examining physician Dr. Whitsett reported on May 24, 2002, that his impression was that Plaintiff had a tear of the medial meniscus of his right knee. *Id.*

Examining physician Dr. Padamadan reported on March 4, 2003, that Plaintiff walked with a brace on his right knee, that examination of the knee was negative although range of motion was limited, he had the scattered rhonchi of chronic smoking, his sensory examination was normal, his knee and ankle jerks were intact, he was able to walk on heels and toes, and he was able to squat. (Tr. 158-67). Dr. Padamadan also reported that Plaintiff's diagnoses were obesity and protuberant abdomen from prior ethanolism, breathing difficulty from rapid increase in weight and smoking, history of medial meniscus tear without clinical findings, back pain without objective findings, and addictive behavior with history of ethanolism now on Oxycodone and methadone. *Id.* Dr. Padamadan opined that Plaintiff would have difficulty crawling, kneeling, climbing stairs, poles, and ladders and that he did not see any indication for limitation of physical activity. *Id.* A lumbar spine x-ray performed in conjunction with Dr. Padamadan's examination revealed some element of congenital stenosis complicated by degenerative spondylosis at L3-4 with disc space narrowing and spur formation. *Id.*

Examining psychologist Dr. Schulz reported on March 21, 2003, that there was nothing remarkable about Plaintiff's speech, his affect was appropriate and congruent, his motor activity was calm, his mood was euthymic, and that there were no signs of anxiety. (Tr. 135-41). Dr. Schulz also reported that Plaintiff's long-term memory was within the adequate range, he retained his immediate memory, his ability to abstract was in the borderline range, he was oriented and alert, and his judgment appeared sufficient to make life decisions and conduct his own living

arrangements. *Id.* Dr. Schulz noted that Plaintiff's diagnoses were depressive disorder and personality disorder and he assigned Plaintiff a GAF of 62. *Id.* Dr. Schulz opined that Plaintiff's ability to relate to others was mildly impaired, his ability to understand, remember, and follow instructions was mildly impaired, his ability to concentrate and maintain attention was minimally impaired, and his ability to withstand the stresses and pressures associated with day-to-day work activity was mildly impaired. *Id.*

In an undated report, treating physician Dr. Rorrer of the Dayton Pain and Preventative Medicine facility reported that Plaintiff's diagnoses were chronic low back pain, bursal syndrome of the shoulder, lumbar radiculitis, sleep apnea, and obesity, that his condition was poor but stable, and that he had decreased range of motion of his lumbar spine, sore shoulder, a positive sleep apnea test, and a positive MRI for facet arthritis. (Tr. 211-12). Dr. Rorrer also reported that Plaintiff was able to stand/walk for 3 hours in an 8-hour day and for 1/4 hour without interruption, sit for 3 hours in an 8-hour day and for ½ hour without interruption, and lift/carry up to 5 pounds. *Id.* Dr. Rorrer opined that Plaintiff was unemployable and would be so for 12 months or more. *Id.*

Dr. Rorrer reported on August 23, 2003, that he had treated Plaintiff since August, 1999, his diagnoses were rotator cuff disorder, lumbar spine pain, lumbar radiculitis and nerve root compression, insomnia, and sleep apnea. (Tr. 206-10). Dr. Rorrer opined that Plaintiff was not able to perform most work-related mental activities. *Id.*

Treating psychiatrist Dr. Rahman of Greene Pak Psychiatric Services reported on August 30, 2004, that he had been treating Plaintiff since January 13, 2004, he had always been quite functional until he sustained severe injuries and now complained of constant back and knee pain, that he continued to experience depression with low self esteem, feeling sad, crying episodes, being

6

withdrawn and isolated, and that he had impaired concentration, poor memory, racing thoughts, and mood swings. (Tr. 218-24). Dr. Rahman also reported that Plaintiff had severe anxiety, tended to be paralyzed with worries, had to rely on methadone and percocet for pain, his activities of daily living were severely compromised, that he showed considerable psychomotor agitation and retardation, his range of affect was constricted, and that he displayed paucity of thought. *Id.* Dr. Rahman opined that Plaintiff was not able to engage in any meaningful career opportunity and that occupationally and socially, he continued to be severely impaired. *Id.* Dr. Rahman also opined that Plaintiff had fair to poor to no abilities to make occupational, performance, and personal-social adjustments. *Id.*

Phyllis Lackey, a counselor at Green Pak Psychiatric Services reported on April 26, 2005, that Plaintiff had received treatment at Green Pak since January 13, 2004, that Dr. Rahman had identified Plaintiff's diagnosis as bi-polar, that he had been seeing Dr. Rahman monthly, and that he had recently started seeing her (Ms. Lackey) on a weekly basis to help him cope with chronic depression. (Tr. 298-99). Ms. Lackey also reported that Plaintiff usually presented as helpless and hopeless, tearful, a loner, and that he had low self esteem and motivation. *Id.* Ms. Lackey opined that Plaintiff struggled daily with depression and was not able to be employed in any capacity. *Id.*

On May 10, 2006, Plaintiff underwent a video arthroscope of his left knee with an arthroscopic partial medial meniscectomy for a complex tear of the posterior horn of the medial meniscus which Dr. Forster performed. (Tr. 344-53).

Dr. Rahman reported on June 4, 2006, that Plaintiff had constant back and knee pain, severe depression, anxiety, racing thoughts, chronic insomnia, impaired concentration and memory, and that he was more withdrawn and isolated. (Tr. 357-75). Dr. Rahman also reported that Plaintiff

7

had no energy, no motivation, low self esteem, felt overwhelmed all the time, was irritable, had anger outbursts and mood swings, and that he had feelings of helplessness, hopelessness, and worthlessness. *Id.* Dr. Rahman noted that Plaintiff had poor coping and social skills, was on a regimen of medications, that his habits and interests had been severely compromised, that he was usually alert but looked overwhelmed, distracted, anxious, guarded, and depressed, and that his affect was constricted. *Id.* Dr. Rahman identified Plaintiff's diagnoses as bipolar affective disorder and panic disorder and he assigned Plaintiff a GAF of 40-45. *Id.* Dr. Rahman opined that Plaintiff was not able to engage in any meaningful functional capacity. *Id.* Dr. Rahman also opined that Plaintiff had extreme limitations in activities of daily living, marked difficulties in maintaining social functioning, extreme deficiencies of concentration, and that he had four or more episodes of deterioration. *Id.* Dr. Rahman opined further that Plaintiff was not able to perform any work-related mental activities. *Id.*

Treating physician Dr. Bell of Wright State Physicians reported on June 6, 2006, that Plaintiff established care in the office on October 30, 2003, that his diagnoses were degenerative disc disease of the back, right knee meniscal tear, left knee meniscal tear and repair in May, 2006, asthma and chronic obstructive pulmonary disease, hypertriglyceridemia, hypercholesterolemia, HDL deficiency, bipolar depression, obstructive sleep apnea, GERD, impaired glucose tolerance, folate deficiency, subacute cerebellar infarct, obesity, macrocytic anemia, anxiety disorder, restless leg syndrome, smoker, and chronic headaches, that he also received treatment from pain specialists Drs. Moore and Rorrer and psychiatrist Dr. Rahman, and that Dr. Forster had treated his knees. (Tr. 409-11). Dr. Bell also reported that Plaintiff had been hospitalized in May, 2006, for respiratory failure that was the result of the combination of his narcotic use, recent surgery, and a subacute cerebellar

8

infarct, (*see* Tr. 474-83), that on recent examination which was limited due to his size, his lungs had decreased breath sounds with occasional wheezes, his abdomen was morbidly obese, there was tenderness in the spine and paraspinous regions, his extremities had varying degrees of edema, and he walked with a cane. *Id.* Dr. Bell opined that due to his medical problems, Plaintiff was unable to hold any type of sustained gainful employment. *Id.*

Ms. Lackey reported on July 29, 2006, that she had been seeing Plaintiff since March, 2005, that he was no able to perform any work-related mental activities, that he had no interest or participation in normally enjoyed activities, was helpless, hopeless, had feelings of worthlessness, had mood swings, and that his symptoms were severe and chronic. (Tr. 432-47). Ms. Lackey also reported that Plaintiff had extreme restrictions of activities of daily living, extreme difficulties in maintaining social functioning, extreme deficiencies of concentration, and four or more repeated episodes of decompensation. *Id.* Dr. Rahman also signed the report which Ms. Lackey submitted. *Id.*

Dr. Bell reported on March 6, 2006, that Plaintiff's diagnoses were degenerative joint disease, chronic obstructive pulmonary disease, depression, folate deficiency, and sleep apnea, that his prognosis was poor but stable, and that he was able to stand/walk, sit, and alternate positions for ½ to 2 hours in an 8-hour day. (Tr. 497). Dr. Bell also reported that Plaintiff was able to occasionally lift up to 10 pounds and that he was not released for either full-time or part-time employment. *Id.*

Dr. Olsen of the Wright State Physicians reported on September 5, 2006, that Plaintiff's diagnoses were bilateral subacute cerebellar infarcts, degenerative disk disease of the spine, depression, and a cognitive impairment. (Tr. 496). Dr. Olsen also reported that Plaintiff's

9

prognosis was fair, that he was able to stand/walk for ½ to 2 hours in an 8-hour day, sit for 2 to 4 hours in an 8-hour day, occasionally lift up to 10 pounds, and that he was not released for either full-time or part-time employment. *Id.*

The MA testified at the hearing that Plaintiff did not meet or equal the Listings, that a person with Plaintiff's impairments would be able to lift 10 pounds occasionally and 5 pounds frequently, stand or walk for 2 hours in an 8-hour day, sit for 6 hours in an 8-hour day, that the individual should have a job with a sit/stand option, and that the individual should not claim ladders, scaffolds, ropes, and should avoid concentrated exposure to the cold, heat, wetness, humidity, vibration, heights, and hazardous areas. (Tr. 566-77). The MA also testified that Plaintiff's obesity would not increase his limitations at the sedentary level of work, that even including his obesity, Plaintiff did not satisfy the Listings, that considering the pain that Plaintiff seems to have, his treating physicians' opinions that he is disabled would be reasonable. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting his treating psychiatrist's opinion and by failing to find that he is disabled by pain. (Doc. 9).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or

evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Plaintiff's psychiatrist, Dr. Rahman, has been treating Plaintiff since January, 2004, and he has consistently reported over time that Plaintiff is disabled by his mental impairments. In support of his opinion, Dr. Rahman has noted that Plaintiff has exhibited considerable psychomotor agitation and retardation, a restricted affect, paucity of thought, severe depression, racing thoughts, impaired concentration and memory, and feelings of hopelessness, helplessness, and worthlessness. In addition, Dr. Rahman reported that Plaintiff looked overwhelmed and that he was distracted and guarded. Dr. Rahman's opinion is supported by Ms. Lackey's reports and clinical notes. For example, Ms. Lackey has noted that Plaintiff presented as sad, depressed, hopeless, irritable, worthless, and that he had low energy. *See, e.g.,* Tr. 353-79; 448-73. Additionally, Ms. Lackey noted that Plaintiff presented with low self esteem and motivation and that he was tearful at times. *Id.* The only evidence which arguably conflicts with Dr. Rahman's opinion are the reports and opinions of examining psychologist Dr. Schulz and the reviewing psychologist. *See* Tr.143-56. However, the Court notes that Dr. Schulz gave his opinion in March, 2003, and the reviewing psychologist gave her opinion in April, 2003, times which pre-date Plaintiff's January, 2004, commencement of treatment with Dr. Rahman and Ms. Lackey. Therefore, once Plaintiff began receiving psychiatric care, Dr. Rahman's opinion stands virtually unchallenged. Under these facts, the Commissioner erred by rejecting Dr. Rahman's opinion that Plaintiff is disabled by his mental impairment as of January, 2004, the time Plaintiff began receiving mental health treatment.

This Court reaches a similar conclusion with respect to Plaintiff's allegations of disabling pain. First, the Court notes that all of Plaintiff's long term treating physicians–Drs. Rorrer, Bell, and Olsen–have opined that Plaintiff is disabled by his impairments, particularly by the pain which results from those impairments. In addition, treatment notes provided by pain specialist Dr.

12

Rorrer reveal that over time Plaintiff's complaints of pain have been consistent, he has exhibited a severely restricted range of lumbar spine motion, a positive heel-toe walk test on the right, and a positive straight leg raise bilaterally. *See, e.g.,* Tr. 177-205, 226-28. In addition, the objective tests of record have revealed positive findings. For example, a January, 244, MRI showed moderate disc degenerative disease at L3-4 and facet arthritis at L3-4 and L4-5. (Tr. 213). Further, a March, 2005, Sympathetic Sudomotor Assessment was positive. (Tr. 300-14). Finally, as noted above, after reviewing the entire record, the MA testified that considering the pain that Plaintiff seemed to have, his treating physicians' opinions that he is disabled are reasonable.

The only evidence which arguably contradicts Plaintiff's treating physicians' opinions, in addition to the MA's opinion, is the opinion of examining physician Dr. Padamadan. Under these facts, then, the Commissioner erred by rejecting Plaintiff's treating physicians' opinions that he is disabled, particularly by his pain.

This Court concludes that the Commissioner's decision that Plaintiff was not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v.*

*Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, the Court notes that Plaintiff's long-term treating physicians, including his treating psychiatrist, have opined that Plaintiff is disabled and that the only evidence which arguably contradicts those opinions are the opinions of non-treating physicians.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

November 14, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).